Michele Anderson-West (9249)
**ANDERSON-WEST LAW**
7102 South 3200 West, #1153
West Jordan, Utah 84084
801.830.1953
michele@andersonwestlaw.com
         *Attorney for Plaintiff*

---

### UNITED STATES COURT DISTRICT OF UTAH
### CENTRAL DIVISION, STATE OF UTAH

---

| | |
|---|---|
| KELLY MURPHY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>TERAFLEX, INC., a Utah corporation,<br><br>Defendant. | **COMPLAINT AND JURY DEMAND**<br><br><br>Case No. 2:22-cv-00610-JCB<br><br>Magistrate Judge Jared C. Bennett |

Plaintiff Kelly Murphy ("Ms. Murphy" or "Plaintiff"), by and through undersigned

counsel, hereby submits this Complaint and against Teraflex Inc. ("Defendant" or "Teraflex")

and for causes of action, alleges as follows:

### INTRODUCTION

Ms. Murphy brings this action to redress consequences due to Defendant's interference

with Ms. Murphy's legally protected right to take leave under the Family and Medical Leave

Act, 29 U.S.C. §2601, *et seq*. (FMLA).  Ms. Murphy worked for Teraflex from July 2020

through February 1,  2022.  Ms. Murphy was exposed to Covid-19 ("Covid") on August 18,

2021, while at work.  Teraflex told her to go home and test herself for Covid after being isolated

for 7 days.  Ms. Murphy became very ill and after several inconclusive rapid antigen & PCR

tests, tested positive for Covid on September 7, 2021.  Ms. Murphy reported the test results to

Teraflex, who told her to stay home for an additional 14 days (having already been absent from work since August 18, 2021) and requested she bring a return-to-work memo from her doctor in order to return to work on September 21, 2021.  Ms. Murphy was diagnosed with Post Acute Sequelae of Covid19 (PASC) commonly referred to as "Long-Covid" on September 20, 2021 and immediately contacted Teraflex's Director of Human Resources, Ian Falkner and requested FMLA leave due to her continued Covid-like symptoms of dyspnea on exertion, fatigue, headaches, neuropathy in limbs, muscle aches and pains per the recommendation of her physician.

Mr. Falkner denied Ms. Murphy's request and told her that she did not need to take FMLA leave.  Mr. Faulkner told Ms. Murphy that Teraflex would work with her as to accommodations if she brought in a note from her doctor as to restrictions.   Ms. Murphy returned to work on September 21, 2021 with a letter from her physician recommending that Ms. Murphy take FMLA leave.  Mr. Faulkner reiterated his previous statement telling Ms. Murphy that she did not need to take leave and that Teraflex would work with her to accommodate her restrictions.

Teraflex did not work with Ms. Murphy and did not accommodate her requests for accommodation associated with her Long-Covid.  Teraflex fired Ms. Murphy in retaliation for requesting leave under the FMLA and in retaliation for Ms. Murphy took steps to protect her own health and safety.   Ms. Murphy has suffered damages as a direct result of Teraflex's interference and retaliation in an amount to be determined at trial, but not less than $200,000.

## PARTIES

1.      Ms. Murphy is an individual who resides in Salt Lake County, Utah.

2.      Teraflex is a Utah domestic corporation doing business in Salt Lake County, Utah.

3.      At all times relevant herein, Teraflex employed more than than fifty (50) employees in Salt Lake County, Utah.

4.      At all relevant times, Teraflex was Ms. Murphy's employer, as that term is defined in the FMLA.

5.      Teraflex, at all times relevant herein, acted through and by its agents, employees, managers, representatives and supervisors, who acted for and on behalf of Teraflex.

**JURISDICTION AND VENUE**

5.      This court has jurisdiction pursuant to 28 U.S.C. §1331.

6.      The employment practices alleged to be unlawful were committed in Salt Lake County, State of Utah, which is within the jurisdiction of the United States District Court for the District of Utah, Central Division.  Accordingly, venue is proper pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1391.

**FACTUAL ALLEGATIONS**

7.      Teraflex hired Ms. Murphy or around July 17, 2020.

8.      Ms. Murphy first worked as a warehouse production assembly worker and later worked as a Packsize machine operator.

9.      Ms. Murphy's starting salary was $17.00 per hour.

10.     In addition to her hourly wage, Teraflex offered benefits to Ms. Murphy including health and dental insurance.

11.     Ms. Murphy was well qualified for her positions and met or exceeded Teraflex's expectations.  For example, Ms. Murphy received numerous accolades from Teraflex as to meeting and exceeding Teraflex's monthly goals; always received excellent performance reviews and received a $2.00 per hour raise in December 2021.

12.     On or around August 18, 2021, Ms. Murphy was exposed to Covid while at work and Teraflex sent her home, telling Ms. Murphy to test for Covid in 7 days.

13.     Ms. Murphy became very sick and tested positive for Covid on September 7, 2021.

14.     Teraflex told Ms. Murphy she could return to work in 14 days with a "return to work note" from Ms. Murphy's doctor.

15.     On September 20, 2021, Ms. Murphy was diagnosed with Long-Covid.

16.     The symptoms associated with long-Covid significantly impacted Ms. Murphy's ability to stand for long periods of time, ability to easily climb ladders and reach over her head to retrieve items, perform repetitive movements, and other tasks that required use of muscle strength.

17.     Ms. Murphy requested FMLA forms from the Director of Human Resources, Ian Falkner, on September 20, 2021 in order to care for her serious medical condition associated with Long-Covid.

18.     Mr. Falkner denied Ms. Murphy's request and told Ms. Murphy that she did not need to take FMLA leave and told her that Teraflex would take care of her.

19.     Ms. Murphy returned to work on September 21, 2021 with a letter from her physician recommending that Ms. Murphy take FMLA leave.

20.     Mr. Falkner reiterated that Teraflex would accommodate her restrictions due to Long-Covid.

21.     Ms. Murphy requested accommodation and patience for completing her tasks and provided HR with a doctor's note advising Teraflex, amount other things, to limit Ms. Murphy's exposure to bright lights and loud sounds to accommodate Ms. Murphy's frequent headaches and advised Teraflex that Ms. Murphy should not lift more than 50 pounds.

22.     Additionally, Ms. Murphy requested a reduction of the weight limit that she had to hold while standing, requested she be able to rest in a seated position as needed, she requested to be allowed more frequent breaks, rest periods and to limit repetitive motion.

23.     Teraflex did not accommodate or take care of Ms. Murphy as promised and did not even follow its own policies and procedures as to her light duty requests-even though Ms. Murphy had doctor's notes.

24.     Teraflex moved Ms. Murphy to the position of warehouse assembly worker which required significantly more exertion than did her job as Packsize machine operator.

25.     On or around January 19, 2022 Teraflex issued Ms. Murphy a performance improvement plan (PIP) alleging Ms. Murphy was untruthful in her need for light duty (despite her having a doctor's note).  In this regard, Teraflex unilaterally decided that Ms. Murphy could lift 50 pounds or greater which was against Ms. Murphy's physician's advice.

26.     Teraflex wrote on the PIP that it was Ms. Murphy's "final warning" yet Ms. Murphy had no previous disciplinary actions to warrant a "final warning."

27.     In late January 2022, Ms. Murphy took it upon herself to preserve her health and abide by the limitations given by her physician and switched assembly warehouse orders with

5

co-workers.  The co-workers had no restrictions as to light duty and the task assigned to Ms.

Murphy was completed satisfactorily and on time.

28.     Teraflex fired Ms. Murphy on February 1, 2022 alleging insubordination due to

her switching warehouse assembly orders with her co-workers.

29.     Teraflex has a progressive discipline policy which includes a verbal warning, a

written warning, a final written warning and then termination.

30.     Teraflex did not follow its own policies and procedures when it issued Ms.

Murphy the PIP in January 2022 and did not follow its own policies and procedures when it fired

Ms. Murphy on February 7, 2022.

31.     Ms. Murphy's job would have been protected if Teraflex, had not interfered with

her request for FMLA leave.

32.     Ms. Murphy has suffered damages a result of Teraflex's unlawful actions Ms.

Murphy has been damaged in an amount of approximately $100,000.

**<u>FIRST CAUSE OF ACTION</u>**
***FMLA Interference***
***29 U.S.C. § 2601 et seq and CFR §825.100 et seq.***

33.     Ms. Murphy realleges all preceding paragraphs as if stated full herein.

34.     Teraflex is an employer with more than fifty (50) employees.

35.     Plaintiff was an eligible employee within the meaning of 29 U.S.C. § 2611(1), in

that she had been employed by Teraflex for over twelve (12) months at the time she requested

leave under the FMLA.

36.     Plaintiff worked more than 1,250 hours for Teraflex during the twelve-month

period immediately preceding her FMLA request.

6

37.     Teraflex interfered with Plaintiff's for taking FMLA leave by refusing to provide her the forms necessary and telling Ms. Murphy that Teraflex would take care of her.

38.     Teraflex is liable to Ms. Murphy for all wages and wage increases to which she would have been entitled but for Teraflex's conduct, including salary, profit sharing, employee benefits and other compensation which she lost due to Teraflex's violation of the FMLA.

39.     Teraflex is also liable for liquidated damages, prejudgment interest on those losses, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further equitable relief as the Court deems appropriate (including reinstatement, employment and/or promotion).

40.     Teraflex's conduct toward Ms. Murphy was willful and malicious and manifested a reckless indifference toward, and disregard of Ms. Murphy's interests and rights, entitling Ms. Murphy to an award of punitive damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**RETALIATION**
*29  U.S.C. § 2601 et seq.*

41.     The preceding paragraphs are incorporated herein by reference.

42.     At all times relevant to this complaint, Teraflex was Ms. Murphy's "employer" within the meanings of the FMLA.

43.     At all times relevant to this complaint, Ms. Murphy was an "eligible employee" of Teraflex within the meaning of the FMLA.

44.     Ms. Murphy requested FMLA leave in September 2021 in order to care for her own serious health condition.

45.     Teraflex denied Ms. Murphy's request.

46.    Prior to requesting FMLA leave, Ms. Murphy had always met or exceeded Teraflex's expectations.

47.    Prior to requesting FMLA leave, Ms. Murphy had never received any discipline.

48.    Teraflex retaliated against Ms. Murphy when she requested accommodation that was supported by a doctor's note.

49.    Teraflex retaliated against Ms. Murphy by assigning her work that it knew would not be suitable for her due to her Long-Covid.

50.    Teraflex retaliated against Ms. Murphy when it issued her a PIP based on Ms. Murphy taking measures into her own hands to protect her health and safety.

51.    Teraflex retaliated against Ms. Murphy when it terminated her employment alleging "insubordination."

52.    Teraflex's proffered reason for firing Ms. Murphy was pretext and the real reason it fired Ms. Murphy was in retaliation for needing and requesting FMLA leave.

53.    Teraflex is liable to Ms. Murphy for all wages and wage increases to which she would have been entitled but for Teraflex's conduct, including salary, profit sharing, employee benefits and other compensation which she lost due to Teraflex's violation of the FMLA.

54.    Teraflex is also liable for liquidated damages, prejudgment interest on those losses, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further equitable relief as the Court deems appropriate (including reinstatement, employment and/or promotion).

55.    Teraflex's conduct toward Ms. Murphy was willful and malicious and manifested a reckless indifference toward, and disregard of Ms. Murphy's interests and rights, entitling Ms.

Murphy to an award of punitive damages in an amount to be proven at trial, in an amount of not less than $200,000.

### REQUEST FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff requests a trial before a jury.

### PRAYER FOR RELIEF

WHEREFORE, as a result of the foregoing allegations and causes of actions, Plaintiff is entitled to judgement, as follows:

a.      For an award of compensatory damages, both special and general damages suffered, which will be shown at the time of trial;

b.      For an award of liquidated damages for Teraflex's willful violation of the FMLA;

c.      For all attorneys' fees and costs, including expert witnesses fees;

d.      For an award of pre and post judgment interest; and

e.      For such other and further relief as the Court deems just, equitable, and proper.

DATED this 19th day of September 2022.

 _/s/ Michele Anderson-West_
Michele Anderson-West
ANDERSON-WEST LAW
*Attorney for Plaintiff*